Application of Thomas LAMB.

Patent Appeal No. 7100.

United States Court of Customs
and Patent Appeals.

Feb. 20, 1964.

Emery, Whittemore, Sandoe & Graham, New York City (Nichol M. Sandoe, New York City, of counsel), for appellant.

Clarence W. Moore, Sol., U. S. Patent Office (Fred W. Sherling, U. S. Patent

Office, of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

ALMOND, Judge.

This is an appeal from the decision of the Board of Appeals affirming the examiner's rejection on prior art of appellant's claims 13, 14 and 15, the only claims remaining in the case.

The application[1] is for "Handles or Holders for Writing Instruments."

Claim 15 is typical and, stated with reference to the drawing immediately following, adequately describes the claimed invention:

"15. A handle for a writing instrument comprising an elongated body [1] having an end portion [4] which tapers inwardly toward the axis of the body at the writing end [3] thereof, and having three symmetrical angularly disposed gripping surfaces [5, 6 and 7] adapted to be engaged by the thumb, forefinger and middle finger of the hand, said gripping surfaces terminating at and merging into the surfaces of said end portion at a common cross sectional plane [Fig. 5] perpendicular to the axis of the body and extending away from said end portion longitudinally of the body and helically around the axis of the body so that in successive cross-sections [Figs. 6–12] taken through the body and through said gripping surfaces the angle between each of said gripping surfaces and a given longitudinal axial plane of reference increases continuously throughout the length of said gripping surfaces, and in which, as said gripping surfaces extend away from said end portion longitudinally of the body, they first curve downwardly toward the axis, then upwardly away from said axis."

FIG. 1
FIG. 3
FIG. 4
FIG. 5
FIG. 6
FIG. 7
FIG. 8
FIG. 9
FIG. 10
FIG. 11
FIG. 12
FIG. 13
FIG. 14

The specification recites the objects of the invention as follows:

"It is an object of the invention to provide a handle or holder for such writing instruments having gripping surfaces which are so formed as to fit naturally, easily and comfortably the surfaces of the thumb, forefinger and middle finger of the hand when said fingers and thumb are held in proper position for writing. Being so formed, they aid children whose writing habits are unformed, to quickly and easily form correct writing habits. Moreover, said gripping surfaces are so formed as to cause the thumb and fingers to assume proper writing

1. Serial No. 808,369, filed April 23, 1959.

position, and thereby aid older children and adults who have formed incorrect writing habits, to quickly and easily correct such habits and to improve their penmanship. Because the contours of said gripping surfaces tend to cause the writer to hold the writing instrument correctly, and permit the writer to hold the writing instrument securely with less finger pressure, hand and finger tension is reduced and the writer may write for long periods without experiencing writing fatigue."

The references relied on are:

| | | |
|---|---|---|
| Gordon | 904,059 | Nov. 17, 1908 |
| Foss | 1,953,706 | Apr. 3, 1934 |
| Pleasants | D–136,595 | Nov. 2, 1943 |
| Lehmann (Swiss) | 11,546 | Jan. 23, 1896 |
| Karpoff (French) | 1,191,434 | Apr. 13, 1959 |

Pleasants shows a handle or holder comprising a tapered bar of triangular cross-section rounded at the ends and twisted near the middle into a helix. Fig. 1 of the Pleasants design patent is as follows:

Fig. 1.

Gordon shows a tapered penholder of triangular cross-section with grooves or channels of concave cross-section at the larger end for resting the index finger and thumb respectively while the forefinger rests on a flat area.

Lehmann shows a tapered holder with raised portions adjacent frontally, said portions with three recesses especially shaped to accommodate when in use the index finger, middle finger and thumb.

Karpoff shows a tapered penholder having a raised portion with three recesses especially shaped to accommodate the thumb, index finger, and middle finger.

Foss shows a penholder of rectangular cross-section with a recess in a longitudinal corner shaped for resting the thumb therein while the forefinger and middle finger rest against flat sections.

The examiner rejected claim 15 as unpatentable over Pleasants with resort to support from Foss or Karpoff if deemed necessary. The examiner pointed out that Pleasants shows three symmetrical angularly disposed gripping surfaces which meet the recitation of helical extension "around the axis of the body" and that the angle of any helically extending gripping surface between each of the surfaces and a given longitudinal axial plane would increase "continuously throughout the length of the gripping surfaces" and hence the recitation would not patentably define over Pleasants. He further noted that the recitation that the gripping surface "first curves downwardly toward said axis then upwardly away

from the axis" is not only structurally defined by Pleasants but is an obvious expedient common to the art as shown by Foss or Karpoff.

The examiner rejected claim 14 as unpatentable over Pleasants for reasons applied to claim 15, with attention directed to Gordon, holding that the recitation of the "gripping surfaces being slightly convex in transverse cross section" was not deemed patentably significant; that Gordon discloses flat and concave gripping surfaces; that it is common to the art to have various shapes when viewed in cross-section, reflecting only a matter of choice relating to personal inclination and comfort and varying from person to person without aiding the writing process.

The examiner rejected claim 13 as unpatentable over Pleasants with attention directed to Lehmann and Karpoff, holding that the precise configuration of the helix was simply another variation to the various curvatures shown by Pleasants, Karpoff and Lehmann. The examiner concluded that such variation in increase of angle was not an unobvious expedient but involved only "design and/or mechanical skill." The examiner further noted that Karpoff appeared to show a helical formation within the claimed range and hence such modification was not deemed inventive.

The board found no error in the examiner's holding, adding, however, with reference to claims 13 and 14 relating to "slightly convex" gripping surfaces, that:

"* * * a common penholder, which is not provided with finger-gripping grooves therein, has an external convex surface for finger-gripping purposes. Accordingly, it is not unobvious to make the gripping surfaces of the Pleasants penholder slightly convex in cross section."

Appellant relies on three aspects of the gripping surfaces to distinguish the invention from the prior art. First is the helical conformation of the gripping surfaces. Second is the curvature of each surface first downwardly toward the axis of the holder and then upwardly away from the axis. In other words, each surface curves inwardly to a maximum depth approximately where the Fig. 9 cross-section is taken. Third is the slightly convex curvature of the cross-section of the gripping surfaces.

We have carefully compared appellant's drawings with those of Pleasants. The striking similarity of these drawings is inescapable. As pointed out by the examiner in sufficient detail, it seems clear to us that the description of appellant's claimed invention reads on and is met in large measure by the Pleasants' disclosure. The helical conformation is clearly shown. One need only examine the surfaces to which the gripping surfaces conform, to wit: the fingers, to find a suggestion to curve the gripping surfaces first inwardly then outwardly. As to the minor variations, it would be obvious to make slight modifications of Pleasants as suggested by the teachings of the secondary references. To recite them in more detail would not, in material substance, amount to more than the analysis and comparison made by the examiner and expressly affirmed by the board.

The board took note of appellant's contention that because the Pleasants' patent is for a design, "the helices shown therein are for ornamental purposes only and have no mechanical utility whatsoever." The board stated further:

"* * * The design shown therein is for a penholder or similar article and it is inescapable that the three helices disclosed have functional aspects, namely to provide finger-gripping surfaces for the thumb, forefinger and middle finger of the hand. The propriety of the use of a design patent as anticipatory for a mechanical claim is well established. In re Hargraves, 19 CCPA 784; 11 USPQ 240; 53 F.(2d) 900; 416 OG 285; 1932 CD 113 and the authorities cited therein."

Appellant states that he does not make the contention attributed by the board but does contend that Pleasants' helix has

no mechanical utility. We agree with the board relative to the functional aspects of the helices disclosed by Pleasants irrespective of the nature of the patent grant.

Appellant argues that the Pleasants' patent may be assigned to the category of "worse than useless," attributing this depreciation to the fact that Pleasants was concerned with ornamental design rather than functional utility. Except by way of argumentative assertion, there is no indication of record that appellant's article is more useful than the pen of the Pleasants' disclosure.

Finding no reversible error in the decision of the board, that decision, for the reasons stated, is accordingly affirmed.

Affirmed.

SMITH, Judge (dissenting).

The majority opinion finds the claimed invention to be obvious and hence unpatentable. Some of the elements of appellant's claimed combination are, in a broad sense, old. But I do not think we should accept this as the criterion for determining the obviousness of the subject matter. Judge Learned Hand, in Reiner v. I. Leon Co., 285 F.2d 501, 503, (2d Cir. 1960), expressed a point of view which I find relevant here when he stated:

" * * * It is idle to say that combinations of old elements cannot be inventions; substantially every invention is for such a 'combination': that is to say, it consists of former elements in a new assemblage. * *

"The test laid down is indeed misty enough. It directs us to surmise what was the range of ingenuity of a person 'having ordinary skill' in an 'art' with which we are totally unfamiliar; and we do not see how such a standard can be applied at all except by recourse to the earlier work in the art, and to the general history of the means available at the time. To judge on our own that this or that new assemblage of old factors was, or was not, 'obvious' is to substitute our ignorance for the acquaintance with the subject of those who were familiar with it. There are indeed some sign posts: e. g. how long did the need exist; how many tried to find the way; how long did the surrounding and accessory arts disclose the means * * ?"

In order that knowledge of the claimed invention not be presumed a part of the relevant prior art, the mandate of 35 U. S.C. § 103 is that the question of obviousness must be determined as of the time the invention was made. My disagreement with the conclusion of the majority opinion arises at this point. It seems to me that the analysis of the prior art, as set forth in the majority opinion, discloses significant differences from the claimed invention. Thus, the Pleasants reference discloses a penholder having three similar, symmetrically arranged gripping surfaces each of which terminates at its lower end in a notched-out recess having a curved wall which meets the gripping surface at substantially a right angle. From this curved wall the gripping surfaces extend straight upwardly, terminating at a point where they are twisted sharply to form a short, steeply inclined helix. The effect of sandwiching the steeply twisted helical surfaces between the two sections of flat, straight surfaces is to force the user to grasp the holder in an incorrect writing position. That is, the short, flat, straight surfaces at the lower end of the holder are the only ones which provide useful gripping surfaces. These surfaces, being short, require the user to grip the holder with the thumb opposite the fingers, thereby forcing a crooking of the fingers in an incorrect writing position. If the user of the Pleasants penholder attempts to use the correct writing position with the fingers extended, the thumb is required to engage the steeply twisted helical portion in an uncomfortable position.

As the examiner has observed, the actual gripping surfaces of the Pleasants penholder are flat. They do not first curve downwardly toward the axis and then curve upwardly away from the axis, as required by appellant's claims. Thus

Pleasants does not disclose the compound curvature which is characteristic of appellant's gripping surfaces. Each of appealed claims 13, 14 and 15 calls for three symmetrical angularly disposed gripping surfaces for engagement by the thumb, forefinger and middle finger of the hand. Each of the gripping surfaces is defined as extending away from a tapered end portion longitudinally of the body and helically around the axis of the body so that in successive cross-sections taken through the body and through the gripping surfaces, the angle between each of said gripping surfaces and a given longitudinal axial plane of reference increases continuously throughout the length of the gripping surfaces.

While the majority opinion does not expressly repeat what seems to me to be an erroneous analysis of Pleasants initially made by the examiner and concurred in by the board, it seems to have accepted it. In the majority opinion the differences referred to above are said to be what the majority terms "minor variations," with respect to which the opinion states:

"* * * it would be obvious to make slight modifications of Pleasants as suggested by the teachings of the secondary references. To recite them in more detail would not, in material substance, amount to more than the analysis and comparison made by the examiner and expressly affirmed by the board."

The examiner's position which was accepted by the board was stated in the action of January 10, 1961 as follows:

"* * * The portion of the gripping surfaces in Pleasants which receives the tip of the fingers defines structure which first curves downwardly toward the axis then upwardly away from the axis as recited. * * *"

This statement of the examiner, concurred in by the board, seems to me to be unsupported by anything which may reasonably be derived from the Pleasants drawings. On the contrary, the drawings indicate a curved, notched-out configuration at the end of each gripping surface, which is designed to receive the tips of the fingers. This clearly indicates to me that the gripping surfaces are straight and flat and lack the curvature specified in the appealed claims.

The secondary references were relied upon to meet those limitations of the appealed claims not found in Pleasants. In describing the references, the examiner used the language of appellant's claims, despite the fact that such language seems inappropriate, and is misdescriptive as applied to the actual disclosures of Lehmann and Karpoff, as well as Pleasants. It is difficult to suppose that anyone would use this precise language at the time appellant's invention was made in attempting at that time to describe the Pleasants holder. Thus, absent appellant's disclosure, I fail to find any suggestion that the art could or should be combined in the manner employed by the examiner. With respect to Lehmann and Karpoff, the examiner's statement that these references show gripping surfaces which extend "helically around the axis of the body" seems misdescriptive. In these patents the surfaces referred to are recesses with raised edges (Lehmann) or cup-like depressions (Karpoff), and while they are angled across the longitudinal axis in some cases, they do not curve around the axis in the manner of a helix. Cf. In re Philip A. Shaffer, Jr., 229 F.2d 476, 43 CCPA 758.

The question of obviousness as presented by this case requires that appellant's invention be appraised not only against the background of the prior art, but also against the practical reality that to be acceptable it must not only perform a useful function, it must be simple, it must require little or no instruction to the user, it must be universal in the sense that it can be used to advantage by hands of many sizes and shapes, and it must be inexpensive to manufacture. Within these requirements and limitations appellant created a holder which, it is asserted, has been found to produce a significant improvement in writing habits and a corresponding improvement in penmanship. This appellant attributes to

reduction in writing fatigue due to the claimed construction of the holder, which encourages the fingers of the writer to assume a correct writing position.

Appellant has contributed a new penholder which possesses significant differences over the prior art. And it seems to me that, except as one reads the elements of appellant's invention into Pleasants and the secondary references, those differences are such that appellant's invention would not have been obvious at the time it was made. I would, therefore, reverse the decision below.